UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SANDRA KUBA,

    Plaintiff,                                  CASE NO.: 6:21-cv-312

v.

DISNEY FINANCIAL
SERVICES, LLC,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, SANDRA KUBA ("Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against the Defendant, DISNEY FINANCIAL SERVICES, LLC ("Defendant" or "Disney"), and as grounds therefore respectfully alleges as follows:

**INTRODUCTION**

1. Plaintiff, a former Disney employee, brings this action against Defendant pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), as amended, 18 U.S.C. § 1514A; the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6; the California False Claims Act, California GovernmentCode § 12653(a); the Florida Private Sector Whistle-blower's Act ("FWA"), §§ 448.101 et seq., Florida Statutes; and the Equal Pay Act of 1963, 29 U.S.C. §206(d).

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1514A(b), 15 U.S.C. § 78u-6(h)(1)(B), 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331, 1337, 1367. This

      Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), the principles of pendent jurisdiction, and Fla. Stat. § 448.103.

3. Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred in this Judicial District.

4. Venue also is proper in this District because Defendant is subject to personal jurisdiction herein by virtue of their substantial, continuous, and systematic commercial activities in this Judicial District and Division. *See* 28 U.S.C. §§ 1391(b)(1); 1391(c)(2); 1391(d). As corporate Defendant is subject to personal jurisdiction in this District and Division with respect to the instant civil action, Defendant "resides" in this District and Division for venue purposes. *See* 28 U.S.C. §§ 1391(b)(1); 1391(c)(2); 1391(d).

5. Plaintiff has hired the undersigned law firm and agreed to pay it a reasonable hourly fee for its services.

## **PARTIES**

6. Plaintiff SANDRA KUBA is an adult individual and resident of Orange County, Florida who, at all times relevant to this action, resided in Orange County, Florida.

7. In March 1999, Plaintiff began working for Disney in Lake Buena Vista, Florida as a Financial Analyst.

8. In October 2013, Disney promoted Plaintiff to the position of Senior Financial Analyst, the position she held until Disney wrongfully terminated her employment on September 21, 2017.

9. At all times relevant to this action, Plaintiff worked in Lake Buena Vista, Florida for Disney as a Senior Financial Analyst in the Revenue Operations Department, which deals with Disney's internal accounting and financial reporting systems.

10. The Walt Disney Company is a Delaware business corporation duly organized and existing under the General Corporation Law of the State of Delaware. The Walt Disney Company's principal executive office is located at 500 South Buena Vista Street, Burbank, California 91521.

11. The Walt Disney Company, together with its subsidiaries, is a diversified worldwide entertainment company.[1] The Walt Disney Company is a publicly traded company.

12. Defendant DISNEY FINANCIAL SERVICES, LLC is a California foreign limited liability company with a principal place of business located at 500 South Buena Vista Street, Burbank, California 91521. Defendant Disney Financial Services, LLC is registered with the Florida Department of State's Division of Corporations and is duly authorized to transact business in the State of Florida. According to the Florida Department of State's Division of Corporations, Defendant Disney Financial Services, LLC's Registered Agent, Margaret C. Giacalone, is located at 1375 Buena Vista Drive, 4th Floor North, Lake Buena Vista, FL 32830 in Orange County, Florida. Defendant is a subsidiary of the Walt Disney Company.

13. At all times relevant to this action, Defendant regularly conducted, and continues to conduct, business in Orange County, Florida.

## ADMINISTRATIVE PREREQUISITES

---

[1] *See* The Walt Disney Company's 2019 Annual Financial Report, Form 10-K For the Fiscal Year Ended September 30, 2019 at 1, *available at*: https://thewaltdisneycompany.com/app/uploads/2020/01/2019-Annual-Report.pdf (last visited February 14, 2021).

14. On or around October 25, 2017, Plaintiff timely filed a complaint with the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") alleging, among other things, that Disney violated SOX and Dodd-Frank and retaliated against her for engaging in protected activities.

15. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's OHSA Complaint during which OSHA conducted investigative activity, there were unsuccessful efforts to settle the matter, and no final decision was made by the Secretary of Labor.

16. Plaintiff exhausted all administrative prerequisites to file claims under SOX and Dodd-Frank. All conditions precedent to bringing this action have been performed or have occurred.

17. During the pendency of the OSHA proceedings, on or around April 22, 2019, Plaintiff's then-counsel entered into an "Agreement to Toll Statute of Limitations" dated April 22, 2019, which provides that all periods of limitation affecting any and all claims or causes of actions that Plaintiff may have against Disney Financial Services, LLC shall be tolled from April 1, 2019.

## FACTUAL ALLEGATIONS

18. On or around March 29, 1999, Disney hired Plaintiff as a Financial Analyst in Lake Buena Vista, Florida and assigned her as a "Cast Member" in its Revenue and Currency Control Department.

19. At the time of her hiring, and at all times relevant to this action, Plaintiff held a Bachelor of Science Degree in Accounting and was (and is) a licensed Certified Public Accountant ("CPA").

20. Throughout her employment at Disney, Plaintiff worked incredibly hard and consistently received positive performance reviews. Plaintiff always received positive comments in her performance evaluations and typically received an overall rating/grade of "Right on Track" or "Moving Ahead".

21. On or around October 27, 2013, Disney promoted Plaintiff to the position of Senior Financial Analyst, the position she held until Disney wrongfully terminated her employment on September 21, 2017. During the relevant time period, Plaintiff was also referred to as the code administrator responsible for non-cash mediums of payment.

22. On a number of occasions throughout her career, Plaintiff reported her concerns about Disney's policies, practices, and procedures that she genuinely and reasonably believed were unethical, improper or illegal to Disney's management. Each time, Plaintiff suffered from harassment, hostility and retaliation as a result.

23. Most significantly, and as further set forth below, during her final years at Disney Plaintiff reported her concerns and made several complaints to Disney management regarding Disney's false revenue recognition practices between October 2016 and the date of her termination in September 2017.

24. While working as a Senior Financial Analyst over the Lodging Team in Disney's Revenue Operations Department ("Revenue Operations"), Plaintiff began to notice accounting irregularities within systems and procedures.

25. Plaintiff noticed that systems altered by Disney's Financial Systems Department ("Financial Systems") caused revenue recognition multiple times for the same transactions and that Revenue Operations recorded nonsense entries in their accounts

5

that camouflaged the altered transactions flow created by Financial Systems. Plaintiff notified management of Financial Systems and Revenue Operations of the irregularities and was ignored. Plaintiff's immediate supervisors refused to make any changes to make systems record cash flow accurately and remit the appropriate amount of sales tax based on accurate reports of revenues.

26. Plaintiff also noticed that the Advisory & Assurance Department ("Advisory & Assurance"), which oversees Disney's internal control and fraud investigation process, was setting up codes and increasing the number of Guest Inconvenience and Promotions charge codes. Instead of auditing transactions, Advisory & Assurance was setting up codes and increasing the number of charge codes, which resulted in recorded revenue that did not exist and needed to be reversed. However, Advisory & Assurance did not complete the reversals and hid information from Plaintiff.

27. On June 15, 2017, Plaintiff reported her concerns regarding Financial Reporting and Advisory & Assurance to Disney's Corporate Management Audit Department ("Management Audit") and Employee Relations Department ("Employee Relations") via email. Plaintiff did not receive a response.

28. Having been ignored, on June 18, 2017, Plaintiff sent an email to George Kalogridis, President of the Walt Disney World Resort ("WDW President") at the time, and Management Audit addressing several of her concerns and reporting, among other things, the following: the manipulation of data/fraud inside Revenue Operations; the shutdown of Code Administration and complete elimination of Sales Audit of non-cash media; allowing too many individuals to set up codes that control the accounting system flow; one code used for multiple products and, at times, crossing product types

      (i.e., Tickets to Food & Beverage); no documentation kept on system code set ups; codes entered into Point of Sale systems without coupons or documentation; Disney's lack of internal controls and lack of compliance with Sarbanes-Oxley in regards to those lack of controls; Advisory & Assurance's elimination of segregation of duties in non-cash media creation (coupons and codes) including proper product approval; and that Advisory & Assurance, which lacked knowledge of how codes are supposed to be set up, had been given system access to create codes and was in fact setting up codes for Disney's accounting system, creating coupons, having keys set up on the register, and auditing its own work.

29. On June 19, 2017, Employee Relations met with Plaintiff and threatened her not to report her concerns about the company's practices elsewhere or Disney would consider it "retaliation against the company."

30. Plaintiff was placed upon a blacklist or problem list for employees who engaged in protected activity by Disney and/or Employee Relations.

31. Despite Plaintiff's communications and complaints, no one at Disney contacted her or her team to provide any further information or documentation regarding any of her claims. The only Disney employees who contacted Plaintiff and communicated with her regarding any of her claims were Employee Relations personnel; however, they contacted Plaintiff only after she sent her report to the WDW President and did so solely in order to threaten her about making further reports about the company's practices elsewhere.

32. After Plaintiff's June 18, 2017 internal report, Employee Relations personnel began to approach Plaintiff's direct reports and pressure them into making disparaging remarks about Plaintiff in an effort to build a "case" against her within the company.

33. From July 29, 2017 to September 12, 2017, Plaintiff was out on medical leave.

34. On or around August 2, 2017, Plaintiff filed a whistleblower complaint with the Securities and Exchange Commission ("SEC").

35. On September 21, 2017, Plaintiff's supervisor, Quandra Love ("Love"), approached Plaintiff and told her that Vice President Andrew Widger ("Widger") wanted to meet with them. Love escorted Plaintiff to a conference room where Widger and Human Resources' Sandy Ramjattan-Grant ("Grant") were both waiting. Widger and Grant terminated Plaintiff's employment, effective immediately. The same day, Plaintiff sent a retaliation complaint to Human Resources.

36. Disney's stated reason for Plaintiff's termination - that Plaintiff's complaints to Disney's management were not valid or good faith complaints but were instead bad faith complaints that were inappropriate and a disruption to the business - was purely pretextual. Disney terminated Plaintiff's employment as a direct result of both her internal complaints and her SEC whistleblower complaint.

37. Plaintiff filed her SEC whistleblower complaint on August 2, 2017, and then Disney fired her on September 21, 2017, shortly after she returned to work from medical leave. From a temporal standpoint, these two (2) events are closely connected and the latter proceeds from the former.

38. Disney failed to follow its own Employee Policy with respect disciplining and terminating Plaintiff's employment. Disney's management failed to properly investigate Disney's issues with Plaintiff prior to discharging her.

## COUNT I
## VIOLATION OF THE SARBANES-OXLEY ACT, 18 U.S.C. § 1514A

39. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of the Section 806 of Title VII of the Sarbanes-Oxley Act of 2002, the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. §1514A.

41. The Walt Disney Company is a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and is required to file reports under Section 15(d) of the Act. Its stock is listed on the New York Stock Exchange.

42. Defendant is a subsidiary, affiliate, and/or agent of The Walt Disney Company and is a "covered employer" under SOX.

43. At all times relevant to this action, The Walt Disney Company's agents and employees had the authority to affect the employment of Plaintiff. Thus, Plaintiff is an "employee" within the meaning of SOX.

44. As more specifically described in the "FACTUAL ALLEGATIONS" section hereinabove, Plaintiff made reports and complaints, both internally and to the Securities and Exchange Commission, regarding conduct that she reasonably believed constituted violations of SOX, rules and regulations of the Securities and Exchange

Commission, and provisions of federal law relating to fraud against shareholders including, but not limited to, conspiracy to commit fraud against shareholders.

45. After engaging in protected activity, Plaintiff was threatened with retaliation by Disney's Employee Relations and Employee Relations began building a case against Plaintiff to terminate her employment.

46. Once Defendant learned that Plaintiff had filed a complaint with the Securities and Exchange Commission, Defendant promptly terminated Plaintiff's employment.

47. Plaintiff's engagement in protected activity was the direct, proximate cause for Defendant's decision to terminate her employment.

48. As a direct result of the aforesaid unlawful retaliatory employment practice, Plaintiff has sustained, and will in the future sustain, permanent and irreparable economic and other harm, including, but not limited to, loss of salary and benefits, diminished earnings, damage to reputation, loss of future earning power, back pay and front pay, emotional distress, and loss of interest.

**WHEREFORE**, the Plaintiff, SANDRA KUBA, respectfully demands judgment against the Defendant, DISNEY FINANCIAL SERVICES, LLC, for lost wages, compensation for any special damages sustained as a result of the discrimination, including, but not limited to, emotional distress and reputational harm, litigation costs, expert witness fees, reinstatement or front pay in lieu of reinstatement, reinstatement of her pension benefits as though she were employed through the date of trial, reasonable attorney's fees, and any other relief the Court deems just and proper.

## COUNT II
### VIOLATION OF DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, 15 U.S.C. § 78u-6(h)

49. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

50. Plaintiff reasonably believed that Defendant was engaging in conduct that was in violation of Generally Accepted Accounting Principles ("GAAP"), WPP Compliance and Accounting Policies, SOX, Dodd-Frank, and U.S. Securities Laws, including, but not limited to, the Securities and Exchange Act.

51. Plaintiff engaged in protected activity when she reported this conduct in writing to the Securities and Exchange Commission.

52. Plaintiff acted in good faith based on a reasonable objective and subjective belief.

53. Defendant knew Plaintiff engaged in protected activity.

54. Plaintiff performed tasks related to a consumer financial product or service.

55. Plaintiff is a whistleblower within the meaning of Dodd-Frank, 15 U.S.C. § 78u-6(h)(1), or is otherwise afforded the protection of the anti-retaliation provisions of said section.

56. Defendant violated Dodd-Frank, 15 U.S.C. § 78u-6(h)(1), because, among other things, it terminated Plaintiff's employment and its decision to terminate Plaintiff's employment was motivated, in part, by its learning that the Plaintiff made disclosures to the Securities and Exchange Commission.

57. Plaintiff has been harmed by reason of Defendant's unlawful conduct and its violations of Dodd-Frank, and she has suffered losses and damages, including, but not limited to, loss of retroactive pay and prospective pay.

**WHEREFORE**, the Plaintiff, SANDRA KUBA, respectfully demands judgment against the Defendant, DISNEY FINANCIAL SERVICES, LLC, for twice the amount of back pay otherwise owed to Plaintiff with interest, compensation for any special damages sustained as a result of the discrimination, including, but not limited to, emotional distress and reputational harm, litigation costs, expert witness fees, reinstatement or front pay in lieu of reinstatement, reinstatement of her pension benefits as though she were employed through the date of trial, reasonable attorney's fees, and any other relief the Court deems just and proper.

### COUNT III
### VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CALIFORNIA GOVERNMENT CODE § 12653

58. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

59. Defendant Disney Financial Services, LLC is covered by the provisions of the California False Claims Act, Cal. Gov't Code §12653(a).

60. As more particularly described within the "FACTUAL ALLEGATIONS" section hereinabove, Plaintiff engaged in protected activity when she objected to and/or reported underreporting and errors in Defendant's revenue recognition and sales tax reporting and payments to the State of California in accordance with Cal. Gov't Code §§ 12562 *et seq*. and for violations of the State's Sales and Use Tax Law.

61. Defendant knew Plaintiff engaged in protected activity.

62. Plaintiff was subject to a pattern of harassment once Defendant learned of Plaintiff's engagement in protected activity.

63. Plaintiff's engagement in protected activity was the motivating factor behind Defendant's decision to terminate Plaintiff's employment.

**WHEREFORE**, the Plaintiff, SANDRA KUBA, respectfully demands judgment against the Defendant, DISNEY FINANCIAL SERVICES, LLC, for twice the amount of back pay otherwise owed to Plaintiff with interest, compensation for any special damages sustained as a result of the discrimination, including, but not limited to, emotional distress and reputational harm, litigation costs, expert witness fees, punitive damages, reinstatement or front pay in lieu of reinstatement, reinstatement of her pension benefits as though she were employed through the date of trial, reasonable attorney's fees, and any other relief the Court deems just and proper.

## COUNT IV
### VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLE-BLOWER'S ACT, FLORIDA STATUTES §§ 448.101 *et seq*.

64. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

65. Plaintiff reasonably believed that Defendant was engaging in conduct that was in violation of the Tax Code, GAAP, WPP Compliance and Accounting Policies, SOX, Dodd-Frank, U.S. Securities Laws, including, but not limited to, the Securities and Exchange Act, in addition to California and Florida Sales and Use Tax Laws.

66. Defendant knew Plaintiff engaged in protected activity.

67. Plaintiff was subject to a pattern of harassment once Defendant learned of Plaintiff's engagement in protected activity.

68. Plaintiff's engagement in protected activity was the motivating factor behind Defendant's decision to terminate Plaintiff's employment.

**WHEREFORE**, the Plaintiff, SANDRA KUBA, respectfully demands judgment against the Defendant, DISNEY FINANCIAL SERVICES, LLC, for back pay otherwise owed to the Plaintiff with interest, compensation for any special damages sustained as a result of the discrimination, including, but not limited to, emotional distress and reputational harm, litigation costs, expert witness fees, punitive damages, reinstatement or front pay in lieu of reinstatement, reinstatement of her pension benefits as though she were employed through the date of trial, reasonable attorney's fees, and any other relief the Court deems just and proper.

## COUNT V
### VIOLATION OF THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 206

69. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

70. At all times relevant to this action, Defendant was and continues to be an "employer" within the meaning of 29 U.S.C. §§ 206 and 207.

71. At all times relevant to this action, Plaintiff was an "employee" of Defendant, whose employees were and continue to be engaged in commerce as defined by 29 U.S.C. §§ 206 and 207.

72. At all times relevant to this action, Defendant employer operated (and continues to operate) as an organization that sells and/or markets its services and/or goods to customers throughout the United States. At all times relevant to this action, Defendant employer obtained and solicited (and continues to obtain and solicit) funds from non-

      Florida Sources, accepted (and continues to accept) funds from non-Florida Sources, and otherwise engaged (and continues to engage) in interstate commerce, particularly with respect to its employees.

73. At all times relevant to this action, Plaintiff's work performance was consistent with Defendant's legitimate expectations.

74. At all times relevant to this action, Defendant paid Plaintiff less than similarly-situated male employees.

75. Defendant denied Plaintiff wages equal to that which was paid males in substantially similar positions.

76. Plaintiff and the similarly-situated male co-workers performed jobs requiring substantially equal effort, skill, and responsibility under similar working conditions.

77. Defendant acted willfully and either knew that its conduct violated the Equal Pay Act or showed a reckless disregard for the matter of whether its conduct violated the Equal Pay Act.

78. Defendant did not act in good faith with respect to the conduct alleged herein.

79. Defendant's conduct complained of herein violates the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206.

**WHEREFORE**, the Plaintiff, SANDRA KUBA, respectfully demands judgment against the Defendant, DISNEY FINANCIAL SERVICES, LLC, for back pay otherwise owed to Plaintiff with interest, liquidated damages, litigation costs, expert witness fees, reasonable attorney's fees, and any other relief the Court deems just and proper.

## ADDITIONAL PARTIES AND/OR CLAIMS

80. Plaintiff respectfully requests leave to amend her Complaint to add additional parties and/or claims upon completing additional discovery. It may be necessary to name agents or employees of the above-named Defendant, to name additional corporate Defendants, and/or to add additional claims.

## DEMAND FOR JURY TRIAL

81. Plaintiff hereby demands trial by jury on all issues so triable as of right by jury in this matter.

Respectfully submitted this 16th day of February, 2021.

By: /s/ Frank M. Malatesta, Esq.
FRANK M. MALATESTA, ESQUIRE
Florida Bar No.: 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Boulevard, Suite 235
Venice, Florida 34285
Telephone No.: (941) 256-3812
Facsimile No.: (888) 501-3865
Frank@malatestalawoffice.com
Staff@malatestalawoffice.com
*Counsel for Plaintiff*