UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SANDRA KUBA,

    Plaintiff,

v.                                                   Case No. 6:21-cv-312-JA-LRH

DISNEY FINANCIAL SERVICES,
LLC,

    Defendant.
_____

ORDER

Disney Financial Services, LLC (DFS) moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all five claims that its former employee, Sandra Kuba, brings in this suit. (Mot., Doc. 18). As set forth below, DFS's motion is denied.

I.     Background[1]

In March 1999 DFS, a subsidiary of the Walt Disney Company, hired Kuba, a Certified Public Accountant, as a Financial Analyst in its Revenue and Currency Control Department in Lake Buena Vista, Florida. (Compl., Doc. 1, ¶¶ 7, 12, 18, & 19). DFS promoted Kuba to Senior Financial Analyst in October

---

[1] The Background section is derived from the allegations of the Complaint (Doc. 1), which are taken as true for the purpose of ruling on the Rule 12(b)(6) motion to dismiss.

2013. (Id. ¶¶ 8 & 21). Kuba held that position until DFS terminated her employment in September 2017. (Id. ¶¶ 8, 21, & 35).

While she was employed by DFS, Kuba reported concerns to DFS management about some of DFS's accounting policies, practices, and procedures. (Id. ¶ 22). Kuba "genuinely and reasonably believed" that these policies, practices, and procedures were "unethical, improper[,] or illegal." (Id.). Between October 2016 and her September 2017 termination, Kuba made several complaints to management about "false revenue recognition practices." (Id. ¶ 23). Despite Kuba's complaints, her supervisors did not make changes to DFS's systems. (Id. ¶ 25).

After Kuba made a complaint to DFS's Corporate Management Audit Department and its Employee Relations Department in June 2017 and did not receive a response, she emailed the then-President of Walt Disney World Resort about her concerns. (Id. ¶¶ 27–28). According to Kuba, the next day the Employee Relations Department met with her "and threatened her not to report her concerns about the company's practices elsewhere or [DFS] would consider it 'retaliation against the company.'" (Id. ¶ 29).

Kuba was away from work on medical leave from July 29, 2017, to September 12, 2017. (Id. ¶ 33). Five days into that leave period, Kuba filed a

2

"whistleblower complaint"[2] with the Securities and Exchange Commission (SEC). (Id. ¶ 34). On September 21, 2017—less than ten days after Kuba had returned from medical leave—DFS terminated her employment, effective immediately. (Id. ¶ 35). DFS told Kuba that it was terminating her because her complaints were not valid or good faith complaints but instead were inappropriate and a disruption to the business. (Id. ¶ 36). Kuba, however, maintains that she was wrongfully terminated for her internal and SEC complaints. (Id.). She also alleges that DFS paid her less than it paid similarly-situated male employees. (Id. ¶¶ 69–79).

Kuba filed this lawsuit on February 16, 2021. (Doc. 1). She brings five claims, alleging violations of: (1) the anti-retaliation provision of the Sarbanes–Oxley Act of 2002,[3] 18 U.S.C. § 1514A; (2) the anti-retaliation provision of the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd–Frank Act), 15 U.S.C. § 78u-6(h); (3) the California False Claims Act, California Government Code § 12650 et seq.; (4) the Florida Private Sector Whistleblower's Act, § 448.101 et seq., Florida Statutes; and (5) the Equal Pay Act of 1963, 29 U.S.C. § 206(d). DFS now moves to dismiss all claims for failure to state a claim

---

[2] The Complaint characterizes what Kuba filed with the SEC as a "whistleblower complaint" but does not describe the contents of that complaint. (See Compl. ¶ 34).

[3] This Act is also known as the Public Company Accounting Reform and Investor Protection Act of 2002.

for which relief can be granted.

## II.  Legal Standards

In assessing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Henley v. Payne, 945 F.3d 1320, 1326 (11th Cir. 2019). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Discussion

### A. Count I—Sarbanes–Oxley Act

Kuba's first claim is under the Sarbanes–Oxley Act, which was enacted "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation." Lawson v. FMR LLC, 571 U.S. 429, 432 (2014). She brings her claim under 18 U.S.C. § 1514A, which provides "Whistleblower Protection" by stating that companies within the coverage of the Sarbanes–Oxley Act may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" because the employee has engaged in activity protected by the statute. 18 U.S.C. § 1514A(a).

DFS seeks dismissal of this claim on two grounds: first, that Kuba did not exhaust her administrative remedies; and second, that Kuba does not allege facts showing that she had an objectively reasonable belief that DFS was violating laws covered by the Sarbanes–Oxley Act. Neither of these arguments has merit.

*1. Exhaustion of Administrative Remedies*

"To recover under § 1514A, an aggrieved employee must exhaust administrative remedies by 'filing a complaint with the Secretary of Labor.'" Digit. Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 773 (2018) (quoting 18 U.S.C. § 1514A(b)(1)(A)). And "if the Secretary has not issued a final decision within

5

180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," the claimant may "bring[] an action at law or equity for de novo review in the appropriate district court of the United States." 18 U.S.C. § 1514A(b)(1)(B); accord 29 C.F.R. § 1980.114(a) (regulation titled "District court jurisdiction over retaliation complaints").

The Complaint alleges that Kuba complied with the administrative prerequisites to bringing this lawsuit. (Doc. 1 ¶¶ 14–16). It states that on October 25, 2017, Kuba filed a complaint with the Department of Labor and that no final decision was made within 180 days. (Id. ¶¶ 14–15). DFS nevertheless maintains that Kuba did not her exhaust administrative remedies because she voluntarily withdrew her complaint on July 23, 2018. This argument fails.

Here, Kuba alleges that she filed a complaint with the Secretary and that before she filed suit, more than 180 days elapsed without the Secretary issuing a decision. Although DFS relies on Kuba's withdrawal of her complaint in July 2018—nine months after she filed it—none of the cases cited by DFS involved a situation where a complainant voluntarily withdrew her complaint after the 180-day period had elapsed. Kuba has sufficiently alleged that she complied with the administrative prerequisites, and once the 180 days passed without a decision, the statute and related regulations allowed her to file suit in a federal district court. DFS's failure-to-exhaust argument fails.

*2. Reasonable Belief*

The whistleblower provision of the Sarbanes–Oxley Act protects employees who "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348 [of Title 18 of the United States Code], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1).[4] DFS contends that Kuba has not alleged facts supporting the "reasonably believes" component of this provision, but the Complaint is sufficient in this regard.

Courts have interpreted the "reasonably believes" language of § 1514A(a)(1) to "encompass[] both a subjective and an objective component." Gale v. U.S. Dep't of Labor, 384 F. App'x 926, 929 (11th Cir. 2010).[5] DFS argues that Kuba has not alleged an objectively reasonable belief of a violation of one of the laws listed in § 1514A and that the conduct about which she complained

---

[4] The protection applies when the employee provides information to a "Federal regulatory or law enforcement agency," "any Member of Congress or any committee of Congress," or "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(A)–(C).

[5] Although Gale is an unpublished opinion, it is persuasive authority, see 11th Cir. R. 36-2, and apparently is the only case from the Eleventh Circuit on this issue. That court noted in Gale that it had "not had occasion to define" "reasonably believes" but found persuasive the reasoning of all the other circuits that have addressed it. See 384 F. App'x at 929.

7

"falls short of the type of serious misconduct" that could be a violation of law and instead amounts only to "trivial internal processes." (Doc. 18 at 9, 11). However, the Court finds that the Complaint sufficiently alleges both the subjective and objective components of the "reasonably believes" portion of § 1514A. Especially considering Kuba's experience as an accountant and her described role at DFS, her allegations of systemic accounting regularities and false revenue recognition practices state a plausible claim of violations of the laws listed in the Sarbanes–Oxley Act. This claim survives the motion to dismiss.

### B.   Count II—Dodd–Frank Act

Kuba's second claim is under the Dodd–Frank Act, which was enacted eight years after the Sarbanes–Oxley Act, "in the wake of the 2008 financial crisis." Somers, 138 S. Ct. at 773. Its aim was "to 'promote the financial stability of the United States by improving accountability and transparency in the financial system.'" Id. (quoting 124 Stat. 1376). As stated in a Senate Report, the Dodd–Frank Act "established 'a new, robust whistleblower program designed to motivate people who know of securities law violations to tell the SEC.'" Id. (quoting S. Rep. No. 111–176 at 38). The Act defines a "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange] Commission." 15 U.S.C. § 78u-6(a)(6).

DFS argues that Kuba's Dodd–Frank Act claim fails to state a claim for which relief can be granted because Kuba does not allege facts showing she engaged in activity protected by the Dodd–Frank Act. DFS does not dispute Kuba's allegation that she complained to the SEC, but DFS contends that Kuba has not alleged that the conduct she reported to the SEC related to a violation of federal securities laws. DFS also faults Kuba for not attaching her SEC complaint to the Complaint (Doc. 1) that she filed in this Court. (See Doc. 18 at 12).

Kuba has sufficiently pleaded her Dodd–Frank claim. DFS cites no authority for a requirement that a Dodd–Frank claimant submit a copy of her SEC complaint to the Court at this stage of the case. Kuba alleges that she made a complaint to the SEC. She does not describe the content of the SEC complaint, but in light of the nature of the internal complaints she made to DFS and the fact that she indeed complained to the SEC—the agency charged with enforcing the securities laws—the Court concludes that Kuba has plausibly alleged that she "provide[d] information relating to a violation of the securities laws" to the SEC. 15 U.S.C. § 78u-6(a)(6). This is all that is required at this stage of the case.[6]

---

[6] Of course, if the facts developed during this lawsuit do not show that Kuba indeed "provide[d] information relating to a violation of the securities laws to the Commission," Kuba will not be able to succeed on her Dodd–Frank Act claim. But that is a question for another day. At this point, she has plausibly alleged that she did so.

### C. Count III—California False Claims Act

In her third claim, Kuba alleges that DFS violated the California False Claims Act, which provides for relief to an employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his or her employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of [the CFCA]." Cal. Gov't Code § 12653(a). DFS moves to dismiss this claim on two grounds: that extraterritorial application of the CFCA is improper in this case and that Kuba has not alleged facts supporting her allegation that she engaged in activity protected under that statute.

The Court cannot conclude at this stage of the case that the CFCA does not apply here; the Complaint alleges that DFS's principal place of business is in California and that DFS engaged in misconduct related to California financial laws. (See Compl. ¶¶ 12 & 60). And Kuba has sufficiently pleaded that she engaged in protected activity under the CFCA. Kuba points out that a violation of the CFCA occurs when, among other enumerated acts, someone "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or

to any political subdivision." Cal. Gov't Code § 12651(a)(7). The Complaint alleges that Kuba engaged in protected activity "when she objected to and/or reported underreporting and errors in [DFS]'s revenue recognition and sales tax reporting and payments to the State of California . . . and for violations of the State's Sales and Use Tax Law." (Compl. ¶ 60). The Complaint sufficiently describes complaints by Kuba of activity within § 12651(a)(7). Thus, Kuba's claim of CFCA retaliation survives the motion to dismiss.

### D. Count IV—Florida Private Sector Whistleblower's Act

Kuba brings her fourth claim under Florida's Private Sector Whistleblower's Act (FWA), which provides:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, any activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. . . .
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> [or]
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

§ 448.102, Fla. Stat. Kuba alleges that she reasonably believed that DFS was

violating "the Tax Code, GAAP, WPP Compliance and Accounting Policies,[7] [the Sarbanes–Oxley Act], [the] Dodd–Frank [Act], U.S. Securities Laws, including, but not limited to, the Securities and Exchange Act, in addition to California and Florida Sales and Use Tax Laws." (Compl. ¶ 65). And she alleges that her protected activity under the Florida statute "was the motivating factor behind [DFS's] decision to terminate [her] employment." (Id. ¶ 68).

In seeking dismissal of this count, DFS argues (1) that Kuba has not alleged facts showing that the conduct to which she objected was an actual violation of law as required under the FWA and (2) that Kuba does not allege that her protected activity was the "but for" cause of her termination. But this claim is sufficiently pleaded.

### 1. *Actual Violation*

DFS notes in its motion that there is a split among Florida appellate courts regarding whether an FWA plaintiff must allege that she objected to an actual violation of the law or whether alleging a reasonable belief that a violation occurred is sufficient to state a cause of action for FWA retaliation. (See Doc. 18 at 16 n.8). Specifically, Florida's Second District Court of Appeal has endorsed the "actual violation" standard, Kearns v. Farmer Acquisition Co., 157 So. 3d 458 (Fla. 2d DCA 2015), while the Fourth District Court of Appeal

---

[7] As noted earlier, the Complaint does not define or explain "WPP Compliance and Accounting Policies."

has held that a plaintiff need only allege a good faith, objectively reasonable belief of a violation, Aery v. Wallace Lincoln-Mercury, LLC, 118 So. 3d 904 (Fla. 4th DCA 2013).

The Supreme Court of Florida has not weighed in on this question, but as DFS points out in its motion the undersigned has previously taken the position that the Supreme Court would agree with the Second District's Kearns decision and adopt the "actual violation" standard. See Graddy v. Wal-Mart Stores East, LP, 237 F. Supp. 3d 1223, 1227 (M.D. Fla. 2017) (Antoon, J.) ("This Court is persuaded that the Supreme Court of Florida would adopt Kearns rather than Aery."). Thus, that standard will be applied in assessing the sufficiency of Kuba's pleading of her FWA claim.

Kuba's response to DFS's motion to dismiss the FWA claim consists of only one sentence: "Plaintiff sufficiently pleads actual violations of laws, rules, and regulations." (Doc. 20 at 18 (referring to other sections of the response)). Construing the reasonable inferences from the allegations of the Complaint in Kuba's favor, the Court agrees that Kuba has sufficiently pleaded actual violations of laws, rule, and regulations to survive the motion to dismiss the FWA count.

    2.   *Causation*

The FWA prohibits employers from retaliating against an employee "*because* the employee has" engaged in protected activity. § 448.102, Fla. Stat.

13

(emphasis added). DFS asserts in its motion that Kuba alleges only that her protected activity was "a 'motivating factor'" in her termination and that "a motivating factor" does not equate to "because of." (See Doc. 18 at 17). DFS argues that Kuba was required to allege "but for" causation.

But what Kuba actually alleges in her FWA claim is that her protected activity "was *the* motivating factor" in her termination, (Compl. ¶ 68 (emphasis added)), not merely that it was "a" motivating factor as characterized by DFS. Thus, even accepting DFS's contention that Kuba must allege "but for" causation to satisfy the "because" language of the FWA, Kuba has adequately alleged "but for" causation here.

### E. Count V—Equal Pay Act

In her final claim, Kuba alleges that DFS violated the Equal Pay Act of 1963, which provides that employers within its provisions shall not "discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Although DFS argues that Kuba has too vaguely pleaded this claim, Kuba's allegations are sufficient under Rule 8 to state a plausible claim for relief under the Equal Pay Act.

### F. Motion for a More Statement

In a footnote in its motion to dismiss, DFS requests in the alternative that the Court construe the motion as a motion for a more definite statement under Federal Rule of Civil Procedure 12(e). (See Doc. 18 at 1 n.1). That rule allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion under this rule "must point out the defects complained of and the details desired." Id.

Beyond its 12(b)(6) arguments—which the Court has rejected—DFS has not "point[ed] out the defects complained of and the details desired" in support of its Rule 12(e) motion. (See Doc. 18 at 1 n.1). And in any event, the Complaint is not "so vague or ambiguous" that DFS "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). DFS's alternative motion is without merit.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 18) is **DENIED** in all respects.

**DONE** and **ORDERED** in Orlando, Florida, on July 30, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

15